**FRIEDNASH**
v.
**COMMISSIONER OF INTERNAL REVENUE.**
No. 13454.

United States Court of Appeals, Ninth Circuit.
Jan. 19, 1954.

Preston D. Orem, Los Angeles, Cal., for petitioner.

Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Carlton Fox, Fred Youngman, Sp. Assts. to the Atty. Gen., Charles W. Davis, Chief Counsel, Washington, D. C., for respondent.

Before HEALY, BONE and POPE, Circuit Judges.

HEALY, Circuit Judge.

This case, here on petition to review a decision of the Tax Court, involves the following situation as found by the Court.

During and prior to 1944 the petitioner, Hyman Friednash, was engaged in the operation of a number of retail liquor stores in southern California. For reasons unnecessary to state the properties used in connection with his liquor business were carried in the name of his wife, Geneva Friednash. Petitioner's brother, Henry Friednash, had worked for him from time to time in one or another of these establishments. While so employed Henry learned that a restaurant and bar known as the Tahiti Cafe was for sale. He urged petitioner and Geneva to buy the property and let him operate it on a partnership basis. The two were reluctant to do that, but they finally agreed to acquire the property and let Henry operate it as an employee. The Tahiti was accordingly purchased at a total cost of $27,500.

As of January 1, 1944, the following agreement, dictated by petitioner, was entered into:

"I, Geneva Friednash, and Henry Friednash do hereby enter into an agreement that said Henry Friednash will be the Acting Manager of the Tahiti Cafe located at 819 National Avenue, National City, and for his services will participate in the net profits of the business to the extent of fifty per cent over and above a monthly salary of Five Hundred Dollars per month, said net profits of the business to be figured after a full year's business and a division of profits made to December 31st, 1944, and subsequent years.

"This agreement can become null and void within thirty days after written notice by either party concerned."

Henry was in complete charge of the Tahiti throughout the year 1944, the tax year in question. He hired and fired the employees (who included seven bartenders), bought the liquor and other supplies, and performed other duties required in the management of the business, working long hours seven day a week. Petitioner and Geneva retained control over the finances. All of the food and liquor bills and other major expenses were paid through the main office of Bay City Liquor House, the name under which petitioner conducted all of his liquor business. Henry deposited all receipts of the business in a nearby bank in a special account on which he had no authority to draw checks. From time to time petitioner would have these funds transferred to his own account or that of the Bay City Liquor House. Henry's salary of $500 per month was paid to him by petitioner bimonthly. Petitioner kept one set of books at his main Bay City Liquor House office in which all the records for his business, including Tahiti, were kept. The Tahiti was operated until September 1945, when petitioner sold it for $60,000 without Henry's consent and against his wishes, Henry later purchasing an interest in the business from the new owner.

The net profits of the Tahiti in 1944, after deducting Henry's salary of $6,-195, were $75,354.24. Petitioner had

an audit made of his books in April 1945 which disclosed that Henry's 50% share of the profits for 1944 amounted to $37,672.62, this amount being credited to Henry in petitioner's books in April 1945 "as of December 31, 1944." Henry made no withdrawals from the account in 1944, saying he had no need for the money, but petitioner paid over the amount to him at intervals during the two years subsequent to April 1945.

Petitioner and his wife, Geneva, filed their returns on an accrual basis. In computing their 1944 community income from the Tahiti they deducted as an expense of doing business the salary paid to Henry and also his half of the net profits for that year, amounting, as above stated, to $37,672.62, in all $43,867.62. Henry, who made his returns on a cash basis, reported for 1944 only the income actually paid him in that year, amounting, as aforesaid, to $6,195.

The Commissioner thought Henry's compensation as deducted by petitioner and Geneva in their community return was excessive, and in his notice of deficiency he determined that $24,000 was reasonable compensation, the balance being disallowed. Further, in the notice of deficiency to petitioner he determined that under Section 24(c) of the Internal Revenue Code only the compensation paid to Henry during 1944 or within 2½ months after the close of the taxable year was allowable as a deduction.[1] The amount of petitioner's taxable income for the year was increased accordingly.

On proceedings for redetermination the Tax Court held that Henry's agreed compensation, including the portion of the 1944 profits belonging to and credited to him on petitioner's books, was not excessive or unreasonable, and on that phase it reversed the Commissioner. However, as to the applicability of Section 24(c) of the Internal Revenue Code, it rejected petitioner's contention that Henry constructively received his full share of the profits in 1944 and should have reported them in his return for that year. Accordingly it upheld the Commissioner in disallowing the deduction taken for Henry's compensation except to the extent it had been paid during 1944 or within 2½ months after the close of that year.

If, as we believe and as the petitioner appears now to concede, the Tax Court rightly applied the provisions of Section 24(c), the case would seem to be at an end. But the Tax Court at the conclusion of its opinion threw out a passing observation which the petitioner thinks opened for him a possible avenue of escape and started the mills of justice grinding all over again. The remark was as follows:

"On the basis of the agreement under which petitioner and Henry operated it might be argued that they were joint adventurers in the operation of Tahiti Cafe, so that the net profits which petitioner sought to deduct as a business expense were never in fact his income. However, since the parties have not pleaded or argued this question in their briefs, and since it is not essential to our disposition of the issue confronting us, we will not now pass upon it."

Following upon this observation petitioner filed with the Court a series of motions for rehearing, for leave to amend his petition, etc., the aim of which was to obtain a finding as to whether or not the relationship between petitioner and Henry was that of joint adventurers. The several motions were

---

**1.** "Sec. 24. Items not deductible
\* \* \* \* \*
"(c) Unpaid expenses and interest. In computing net income no deduction shall be allowed under section 23(a), relating to expenses incurred, or under section 23(b), relating to interest accrued—
"(1) If such expenses or interest are not paid within the taxable year or with-in two and one half months after the close thereof; and
"(2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; \* \* \*."
26 U.S.C.A. § 24.

denied; and petitioner's sole contention here is that the Tax Court erred in denying them. He asks that we ourselves make a finding on the "issue" of joint venture, or in the alternative that we remand the case to the Tax Court for such a finding.

■ Of course no issue of joint adventure was tendered in the case. As seen, petitioner in his tax return treated the relationship between himself and Henry as that of employer and employee, and he pursued the same course in his proceeding for redetermination. We assume, however, that where a question possessing merit lurks in the record the court may, and ought, in appropriate circumstances, to notice it if brought into the open. But we do not have a situation of that sort here. As already said, the Tax Court found an agreement that Henry was not to be a partner, but that he was to operate the store as an employee. The finding is confessedly responsive to the testimony on petitioner's behalf. And by necessary implication it negatives an intent to create a joint venture relationship, since if Henry was to be an employee he was not to be something else. It is important to remember that under the revenue laws the term partnership includes joint adventures, Int.Rev.Code, § 3797(a) (2), 26 U.S.C.A. § 3797(a) (2); and certainly in tax cases the intent of the parties is a vital factor in determining whether a relationship of that nature existed. Cf. Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659; Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 287–288, 66 S.Ct. 532, 90 L. Ed. 670.

■ If one turns to the way in which petitioner and Henry respectively functioned under the agreement, nothing is found necessarily indicative of the proposition that Henry was something other than an employee. Thus we could not say that the Tax Court was in error in failing to find that Henry was not such, but was a joint adventurer. Nor would we be justified in holding that the Court abused its discretion in declining to reconsider the matter. It is reasonable to assume that the Court felt it had already disposed of the point, and disposed of it correctly, hence thought no useful purpose would be served by granting petitioner's motions. The remark of the Court that the existence of a joint venture "might be argued" carries no implication that the argument, if made, would be regarded as persuasive.

Affirmed.