FORT HOWARD PAPER COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3127–65.    Filed December 27, 1967.

*William A. Cromartie* and *Douglas L. Barnes*, for the petitioner.
*Robert M. Burns* and *John L. Pedrick*, for the respondent.

278

OPINION

The core issue herein involves the question of how petitioner should treat overhead expenses in determining the cost of self-constructed assets for tax purposes. Respondent contends that portions of such expenses should be capitalized and added to the cost basis of the assets. Petitioner asserts that it should be entitled to continue its past practice of capitalizing only direct labor and materials costs without allocation of overhead.

Petitioner is a large manufacturer of a great variety of paper and paper products. To a marked degree, its operations are self-sufficient, e.g., it produces the bulk of its own power. For many years prior to and including the taxable year involved herein, petitioner operated on a 24-hour basis, usually for 13 days in each of 2 weeks. During 1961, it employed 1,100 persons at its plant, of whom 190 to 200 persons were repair and maintenance personnel, including mechanics, carpenters, electricians, millwrights, and pipefitters. Such personnel worked throughout the 24-hour daily cycle, the majority of them on the day shift. All were subject to call at any time for emergency work.

At least as far back as 1939, petitioner followed a policy of using repair and maintenance personnel during their spare time in the construction, renovation, and repair of fixed assets used by petitioner in its manufacturing operations. At no time were such personnel diverted from regular repair and maintenance activities to work on such self-constructed assets.

At all times the size of petitioner's repair and maintenance staff was determined exclusively by its need for the continuous operation of its regular producing equipment. No special tools or machinery were acquired for use by such personnel in their activities on self-constructed assets. Respondent does not contend that petitioner maintained a larger than necessary repair and maintenance staff as a cover for its self-construction activities, and, indeed, there is no evidence in the record before us to support any such conclusion.

For 35 years or more, petitioner capitalized only the direct labor and materials charges directly attributable to self-constructed assets. No portion of expenditures in overhead categories (such as fuel, supplies, oil, grease and waste, insurance, bonuses and vacation pay, profit-sharing, cafeteria, and first aid) was capitalized. Some of such overhead was allocated to inventory; the balance was expensed on petitioner's books and deducted as ordinary and necessary business expenses on its Federal income tax returns. Throughout the years, respondent was well aware of petitioner's practice in this regard. Not only did respondent not object, but, in several instances where respondent's agents determined that certain expenditures for repairs should be capitalized, they also included in the capitalized amount only direct labor and material costs.

In January 1965, an investigation and an audit of petitioner's 1963 return was commenced by an agent specially designated by respondent's Chicago office for reasons wholly unrelated to the issue involved herein. During the course of that audit, it was determined that a portion of overhead expenses should be capitalized. As a consequence, respondent decided to invoke the provisions of section 7605 and reopened petitioner's 1961 return, which had previously been closed on audit. On March 12, 1965, just prior to the expiration of the 3-year period of limitations, the deficiency notice involved herein was issued.

It is against the foregoing background that we consider the core issue confronting us. In so doing, we note that we are not faced with questions involving: The proper annual period in which an item of income or expense should be accounted for taxwise; the propriety of the cash versus accrual basis of accounting; the validity of a change of a method of accounting at the instance of the taxpayer; a dichotomy between the basis on which a taxpayer's books and records are kept and that on which his tax returns are filed; or the standards, for tax

and regulatory purposes, imposed upon a public utility. In the instant case, the items involved concededly accrued in 1961, and the question before us is how they should be treated in that year.

Respondent's thrust herein is predicated on two sections of the Internal Revenue Code. He first urges that overhead is a capital expenditure within the contemplation of section 263.[2] Secondly, he asserts that the accounting method utilized and characterized by petitioner as the "incremental cost" method is in fact the "prime cost" method and does not conform to generally accepted accounting principles. Respondent then claims that the requirement of "clearly reflect income" in section 446[3] and the regulations thereunder demands the use of the "full absorption cost" method.[4] Petitioner counterattacks with the proposition that its method has been consistently used over a period of many years with the knowledge, and indeed the approval, of respondent and that the method is in accordance with generally accepted accounting principles. For the reasons hereinafter stated, we agree with petitioner.

We reject as without merit respondent's contention that section 263 of the Code is in and of itself dispositive of the issue before us. By requiring the capitalization of amounts "paid out *for* new buildings or *for* permanent improvements or betterments made to increase the value of any property," such section begs the very question we are asked to answer. We are satisfied that, under the circumstances involved herein, sections 263 and 446 are inextricably intertwined. A contrary view would encase the general provisions of section 263 with an inflexibility and sterility neither mandated to carry out the intent of

---

[2] SEC. 263. CAPITAL EXPENDITURES.
  (a) GENERAL RULE.—No deduction shall be allowed for—
    (1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * *
[3] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.
  (a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.
  (b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.
  (c) PERMISSIBLE METHODS.—Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting—
    (1) the cash receipts and disbursements method;
    (2) an accrual method;
    (3) any other method permitted by this chapter; or
    (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate.
[4] The "full absorption" cost method involves capitalizing direct costs of materials and labor plus an allocable portion of *all* overhead. The "prime cost" method involves capitalizing only direct materials and labor costs. The "incremental cost" method involves capitalizing direct labor and material costs plus that portion of overhead which can be *directly identified* with the self-construction project. Where construction ordinarily takes place only where regular facilities and personnel are not being fully utilized (i.e., during "slack" or "idle" time), there may be no overhead which can be *directly identified* with the project.

Congress nor required for the effective discharge of respondent's revenue-collecting responsibilities. Accordingly, we turn to a determination as to whether petitioner's method of accounting "clearly reflects income" pursuant to the provisions of section 446.

Several broad theses are applicable in such a determination. Income must be reflected with as much accuracy as recognized methods of accounting permit. *Caldwell* v. *Commissioner*, 202 F. 2d 112 (C.A. 2, 1953), affirming on this issue a Memorandum Opinion of this Court. Respondent is given broad discretion in determining whether a particular method of accounting clearly reflects income and a heavy burden is imposed upon the taxpayer to overcome a determination by respondent in this area. *Commissioner* v. *Hansen*, 360 U.S. 446 (1959); *Photo-Sonics, Inc.*, 42 T.C. 926, 933 (1964), affd. 357 F. 2d 656 (C.A. 9, 1966); *Michael Drazen*, 34 T.C. 1070 (1960). Even though a particular method may be in accordance with generally accepted accounting principles, it may not *so clearly reflect income* as to be binding upon the Commissioner. *Schlude* v. *Commissioner*, 367 U.S. 911 (1961); *American Automobile Assn.* v. *United States*, 367 U.S. 687 (1961). Moreover, mere failure of the Commissioner previously to object to the taxpayer's accounting method will not stop him from later challenging it. *Niles Bement Pond Co.* v. *United States*, 281 U.S. 357, 362 (1930); *Hotel Kingkade*, 12 T.C. 561 (1949), affd. 180 F. 2d 310 (C.A. 10, 1950). Finally it has been recognized that consistency of application is an important consideration and may be entitled to considerable weight. *Photo-Sonics, Inc., supra* at 935; cf. *Advertisers Exchange, Inc.*, 25 T.C. 1086 (1956), affirmed per curiam 240 F. 2d 958 (C.A. 2, 1957). But consistency standing alone is not sufficient to satisfy the taxpayer's burden. *Photo-Sonics, Inc., supra* at 935; *Ezo Products Co.*, 37 T.C. 385, 391 (1961); *V. T. H. Bien*, 20 T.C. 49 (1953). Indeed, it will be disregarded where an erroneous method of accounting has been used. *Photo-Sonics, Inc., supra; D. Loveman & Son Export Corporation*, 34 T.C. 776 (1960), affd. 296 F. 2d 732 (C.A. 6, 1961), certiorari denied 369 U.S. 860 (1962).

In the final analysis, we must apply the foregoing theses in light of the particular facts and circumstances of each case with reference to the particular business involved, the particular method employed, and the specific item at issue. *Sam. W. Emerson Co.*, 37 T.C. 1063 (1962). We move to this task mindful of the desirability of avoiding judgments dependent upon "(subtle) accounting nuances" (see *Boyton* v. *Pedrick*, 136 F. Supp. 888, 891 (S.D.N.Y. 1954), affirmed per curiam 228 F. 2d 745 (C.A. 2, 1955)) and aware that in many situations in this area exact calculations may be neither practical nor necessary (cf. *E. W. Bliss Co.* v. *United States*, 224 F. Supp. 374 (N.D. Ohio 1963), affd. 351 F. 2d 449 (C.A. 6, 1965)).

At this point, it is useful to recall the salient facts regarding petitioner's policy with respect to self-constructed assets. Petitioner did not in any way augment its personnel to construct these assets. It relied entirely on its repair and maintenance staff to do this work and then only during "slack" or "idle" time, so that the normal flow of production activities was in no way affected. Thus, petitioner's policy achieved a "double duty" objective. In a very real sense, petitioner killed two birds with one stone. There is nothing in the record before us which indicates that there was any increase in overhead costs which could be directly identified with the self-constructed assets.[5]

We were favored with considerable expert testimony on the propriety of the method of accounting used by this petitioner with respect to self-constructed assets. The testimony was clear and convincing and is supported by our extensive review of accounting authorities. Finney & Miller, Principles of Accounting—Intermediate 292–294 (1965); Hendirksen, Accounting Theory 302–304 (1965); Karrenbrock and Simons, Intermediate Accounting 413 (4th ed. 1964); Kohler, A Dictionary for Accountants 85, 217–218 (3d ed. 1963); Meigs, Johnson, Keller, Intermediate Accounting 509–511 (1963); Holmes, Maynard, Edwards, Meier, Intermediate Accounting 365 (1958).

These authorities and the testimony of the experts herein clearly indicate that both the "incremental cost" method as applied by this petitioner and the "full absorption cost" method urged by respondent are acceptable. This is in marked contrast to the attitude with respect to allocating a portion of overhead to *inventory*, where failure to do so is specifically designated an erroneous method of accounting. American Institute of Certified Public Accountants, Bull. No. 43, Restatement and Revision of Accounting Research Bulletins 29 (1961).

This factor, namely, the utilization of an *erroneous* method of accounting, is what deprives *Dearborn Gage Co.*, 48 T.C. 190 (1967), and *Photo-Sonics, Inc.*, *supra*, heavily relied upon by respondent, of any precedential value herein. We recognize that superficially it would seem to follow that, if a portion of overhead costs is properly allocable to inventory, the same procedure should be followed with respect to self-constructed assets. But the distinctions between the two situations are real. In the first place, they are, as we have noted, treated differently by the accounting authorities. Secondly, since 1918 the respondent has required by regulation that overhead costs be included in inventory. See *Photo-Sonics, Inc.*, *supra* at 934. No such requirement has

---

[5] We are aware that there may well have been some overhead costs generally attributable to the self-constructed assets. But, under the "incremental costs" method, as we understand it, the overhead costs must be *directly identified* with those assets; general attribution is not enough. See fn. 4, *supra*. A good example of such unidentifiable overhead exists in the very case before us, where this petitioner generated its own electric power.

been imposed with respect to self-constructed assets, nor did any of respondent's representatives, who testified at the trial, know of any other general policy or rule which contained any such guidance for revenue agents. Indeed, respondent's own acceptance from time to time of direct labor and material costs without overhead as the measure of the amount of repairs, which this petitioner deducted and respondent required to be capitalized, indicates that no such policy or rule, exists. Thirdly, meaningful standards for measuring inventory overhead costs are usually available. On the other hand, it is often impracticable or even impossible to develop the detailed documentation necessary to support a rational allocation of overhead to self-constructed assets, particularly in a case such as this, where literally dozens of miscellaneous projects were involved.

Respondent also relies heavily on *Ben Perlmutter*, 44 T.C. 382 (1965), affirmed on other issues 373 F. 2d 45 (C.A. 10, 1967), and *Variety Construction Co.*, T.C. Memo. 1962-257. We think these cases are inapposite. The "overhead" costs involved were directly identified with the constructed buildings and therefore properly should have been taken into account. Moreover, in *Perlmutter*, it appears that the taxpayer conceded that some allocation of overhead was proper and that the sole dispute was as to the measure of the allocation. See 44 T.C. at 404. In any event, in both of these cases, the taxpayer's very business was the construction of fixed assets, i.e., buildings, and its personnel was employed for that very purpose. This is a far cry from the situation involved herein, where a large manufacturing concern engages in self-construction activities not at the expense of normal operating time but as a fill-in for slack periods.

Under all the circumstances herein, we hold that petitioner has satisfied its heavy burden and has convinced us that it employed a generally accepted method of accounting which "clearly reflects its income." *Sam W. Emerson Co.*, 37 T.C. 1063 (1962) ; *Klein Chocolate Co.*, 36 T.C. 142 (1961) ; *Geometric Stamping Co.*, 26 T.C. 301 (1956). In so doing, we neither hold nor imply that, under all circumstances, a taxpayer has a right to choose between alternative generally accepted methods of accounting or that respondent may not, under some circumstances, require a taxpayer to accept his determination as to a preferred selection among such alternatives. We hold merely that where a taxpayer, in a complicated area such as is involved herein, has over a long period of time consistently applied a generally accepted accounting method (which is considered "clearly to reflect" income by competent professional authority and is not specifically in derogation of any provision of the Internal Revenue Code) and where this method has been frequently applied by respondent in making adjustments to the taxable income of the same taxpayer (as distinguished from respondent's mere failure to object to its use by such taxpayer), the taxpayer's choice of

method will not be disturbed. *Photo-Sonics, Inc.* v. *Commissioner*, 357 F. 2d 656, 658 fn. 1 (C.A. 9, 1966). See also Report of Commissioner of U.S. Court of Claims in *McNeil Machine & Engineering Co.* v. *United States* (Mar. 29, 1967), 1967-7 C.C.H. Fed. Tax Rep. par. 8173, 1967-6 P.-H. Fed. Taxes par. 58,036.

We now turn to petitioner's treatment of two particular items in the calculation of the cost of its self-construction projects. Petitioner did not capitalize an allocable portion of certain fringe benefit items— i.e., vacation, profit-sharing, group insurance, bonus, cafeteria, and first aid. Neither did petitioner capitalize any of the costs of its drafting department, although such department admittedly prepared plans for some of the self-construction projects.

Since the primary question before us is the propriety of petitioner's accounting method, we deem it entirely within our province to determine whether petitioner has correctly applied such method as to particular items. In so doing, we may raise and dispose of contested issues related to the application of petitioner's method even though such issues were not specifically pleaded, particularly where, as here, the parties are not unduly surprised and are given ample opportunity to argue such issues on brief. Certainly there should be no question as to the propriety of such a course of action where, as here, the issues were clearly raised during the course of the trial and there was specific testimony directed to such issues. Cf. *J. T. Slocomb Co.* v. *Commissioner*, 334 F. 2d 269, 273 (C.A. 2, 1964), affirming 38 T.C. 752 (1962); *Friednash* v. *Commissioner*, 209 F. 2d 601 (C.A. 9, 1954); *Hilbert S. Bair*, 16 T.C. 90, 98 (1951), affd. 199 F. 2d 589 (C.A. 2, 1952); see 9 Mertens, Law of Federal Income Taxation (Zimet rev. 1961), sec. 50.46.

On the basis of the expert testimony given at trial and our review of relevant accounting authorities, we are satisfied that this petitioner should not be required to capitalize either the fringe items or the costs of its drafting department.

With respect to the fringe items, some of these expenditures, such as profit-sharing, bonus, and group insurance, were essentially discretionary in nature and, in any event, were not planned, fixed charges. Others, such as vacation time, cafeteria, and first aid, were not directly identified with the self-constructed assets. Thus, this petitioner's treatment of such expenditures fits the normal accounting categorization of these items as period costs of an administrative character.

A more difficult problem is raised with regard to the drafting department. At first glance, it would seem that the labor cost of the personnel of this department should be charged to the self-constructed assets. In theory, at least, the person who draws the plans for a machine would seem to be making as direct a contribution as the person

who actually builds the machine, and the cost of his labor would therefore appear to be directly traceable to the machine itself.

"Direct" labor, however, refers to that labor which is obviously related to and conveniently traceable to specific assets. "Indirect" labor refers to labor which may be attributable to particular assets, but which is not considered feasible to measure and charge thereto. These labor costs are generally considered part of the general pool of factory "overhead." See Horngren, Cost Accounting—A Managerial Emphasis 22 (2d ed. 1967) ; Gillespie, Cost Accounting and Control 160 (1957). We think that the drafting department of a manufacturing concern, such as petitioner, reasonably falls within the category of "indirect labor." We are satisfied that not all of the self-constructed assets required blueprints, drawings, or the like. We also note that there is often a significant time lag between the planning of the construction of such assets and the actual consummation of construction. Moreover, some of these projects may very well be "scrapped" in the interim. In essence, the activities of petitioner's drafting personnel were conglomerate in nature, as distinguished from those of the repair and maintenance personnel, where there was a clear dichotomy between the "slack" or "idle" time which they devoted to self-constructed assets and the time which they devoted to their normal functions.

Nor do we think a portion of the labor costs of the drafting department should be considered as a variable overhead cost and therefore required to be capitalized under the "incremental cost" method utilized by this petitioner. We have found that the operations of this department were geared to petitioner's production requirements. Here again, respondent does not contend that the size of the drafting department was larger than necessary for this purpose and was therefore a cover for its self-construction activities. Nor is there any evidence in the record herein indicating that such was the case. The drafting department, like the repair and maintenance staff, performed a "double duty" function.

Finally, we are constrained again to note that, on the frequent occasions when respondent required repair items to be capitalized rather than deducted, his agents themselves adopted petitioner's computation of the cost thereof, although they were fully aware that no portion of the expenditures for fringe items or the labor costs of the drafting department were included and although it seems clear that such elements must have been involved in some of the repairs.

Without enunciating any general rule applicable in all cases, we hold that this petitioner has satisfied its burden and that its treatment of fringe items and the labor costs of its drafting department as overhead not allocable to self-constructed assets was entirely proper.

As a consequence of the foregoing holdings, we do not reach the additional issues involved herein, namely: (1) The alleged irregularity of a second examination of petitioner's books and records under section 7605(b) and the issuance thereunder of the within notice of deficiency; (2) the claim that the deficiency notice itself was arbitrary and unreasonable and therefore invalid, or at the very least not entitled to the presumption of correctness;[6] (3) the correct computations of overhead expenses of various of petitioner's departments; and (4) the application of section 481 to certain proposed adjustments.

To reflect other concessions of the parties,

*Decision will be entered under Rule 50.*

---

[6] We are constrained to note, however, that, while the respondent's determination may not have been arbitrary and unreasonable as a matter of law, the revenue agent's calculations were for the most part made with little, if any, attempt to ascertain with even a modicum of accuracy the relevant underlying circumstances. We make this comment with a full realization of the time limitation under which the agent was operating. We also note that nothing in our references to petitioner's burden in our decision on the accounting issues should be construed as holding that such burden was in fact placed upon it in this case. We merely assumed, for purposes of decision, that respondent's determination was presumptively correct and that petitioner had the burden, indeed a heavy one, of overcoming it.