JOSEPH GANN, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Joseph Gann, Inc. v. Commissioner
Docket No. 14244-78.
United States Tax Court
T.C. Memo 1982-104; 1982 Tax Ct. Memo LEXIS 642; 43 T.C.M. (CCH) 682; T.C.M. (RIA) 82104; March 1, 1982. William Gabovitch and Steven A. Gabovitch, for the petitioner. Barry J. Laterman, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Chief Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes: Taxable year ended
Deficiency
October 31, 1973
$ 80,766.51
October 31, 1974
138,203.51
October 31, 1975
83,193.72
We must determine whether during the taxable year ended October 31, 1973, petitioner had gross receipts more than 20 percent of which was from passive investment income and, if it did, whether its election to be treated as a small business corporation was terminated for 1973 and the subsequent years. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time it filed its petition herein, petitioner's principal place of business was Boston, Massachusetts. For each of the taxable years ended October 31, 1973, October 31, 1974, and October 31, 1975, petitioner filed its Federal income tax returns with the Director, Internal Revenue Service Center, Andover, Massachusetts. During the *645 years in issue, petitioner was engaged in selling jewelry at both wholesale and retail. Petitioner's issued and outstanding stock was owned by Joseph Gann, his wife, Rae Gann, and their three children, Herbert Gann, Beverly Bavly, and Shirley Saunders. For its taxable year beginning November 1, 1971, petitioner elected pursuant to section 1372[1] to be taxed as a small business (subchapter S) corporation. From 1966 through 1968, petitioner purchased 2,000 shares of stock in Bearings, Inc. (Bearings), a publicly traded corporation, for $ 61,383.66. During 1969, the first 3,225 shares of Bearings stock petitioner purchased cost $ 128,586.76. After these purchases, petitioner bought additional stock of Bearings. On September 11, 1971, Bearings stock split two-for-one. As a result, petitioner's 2,000 and 3,225 shares referred to above became 4,000 and 6,450 shares, respectively. During the taxable year ended October 31, 1973, petitioner sold 4,000 *646 shares of Bearings stock. On November 14, 1973, Bearings stock again split two-for-one and petitioner's 6,450 shares became 12,900 shares. During the taxable year ended October 31, 1974, petitioner sold 12,900 shares of stock in Bearings. Petitioner utilized the average-cost method to determine its bases in he stock it sold, i.e., the total cost of a particular security was divided by the total number of shares to arrive at a cost per share. At all times relevant hereto, petitioner has consistently used the average-cost method for both book and tax purposes. Under petitioner's method, the average cost of the Bearings shares sold in the taxable years ending October 31, 1973, and October 31, 1974, is $ 88,428 and $ 142,545, respectively. Using the average-cost method to compute the bases of the Bearings stock sold, petitioner's "passive investment income," pursuant to section 1372(e)(5), for the taxable year ended October 31, 1973, is 19.06 percent of petitioner's gross receipts. Under the first-in, first-out (FIFO) method, the cost bases of the Bearings stock sold by petitioner in the taxable years ended October 31, 1973, and October 31, 1974, are $ 61,383.66 and $ 128,586.76, *647 respectively, and petitioner's passive investment income constitutes 20.87 percent of its gross receipts for the taxable year ended October 31, 1973. OPINION The parties in this case disagree as to the proper method for determining petitioner's bases in the Bearings stock. Section 1012 states simply that the basis of property is its cost. When a taxpayer acquires shares of the same stock at different prices and sells only some of the shares, the problem arises of establishing the cost of the shares which were sold. Section 1.1012-1(c)(1), Income Tax Regs., provides that, unless the particular lot from hich the stock is sold can be adequately identified, "the stock sold or transferred shall be charged against the earliest of such lots purchased or acquired in order to determine the cost." Respondent argues that, since there is no evidence identifying which shares were sold, the regulations mandate that petitioner use FIFO to determine its bases in the shares sold. *648 Petitioner presents several alternative arguments: (1) section 1.1012-1(c)(1), Income Tax Regs., cannot be applied to petitioner, since respondent has not alleged, as petitioner contends is required by section 446(b), that petitioner's use of average cost does not clearly reflect income; (2) if the 1973 increase in petitioner's passive investment income is spread over three years, as petitioner urges is mandated by section 481(b), petitioner's subchapter S election does not terminate; (3) equitable considerations dictate that we permit petitioner to utilize average cost.
Section 446(a) states the general rule that "taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." Subsection (b) contains an exception for situations where the taxpayer's method does not clearly reflect income; in those cases the Commissioner may prescribe a method of accounting which does clearly reflect income. "Method of accounting" as used in section 446 includes not only the taxpayer's overall *649 method of accounting (in this case, accrual) but also the accounting treatment of particular items. See section 1.446-1(a)(1), Income Tax Regs. Since the parties have not argued otherwise, we will assume for purposes of discussion that the use of average cost or FIFO to determine basis constitutes a "method of accounting." Petitioner argues that section 446 evinces the intent of Congress to permit a taxpayer to use any method of accounting as long as it clearly reflects income. Because respondent argues only that the method of accounting used fails to comply with the regulations under section 1012, nd not that it fails to clearly reflect income, petitioner contends that respondent has no grounds to require petitioner to change its method of determining basis from average cost to FIFO. In connection with this argument, petitioner states that section 1012 and section 446 read together leave no question as to how a taxpayer is to calculate cost for tax purposes, i.e., by the same method the taxpayer uses for his books. Thus, petitioner argues that the Commissioner's regulation requiring that cost be calculated by FIFO (when the particular lot from which *650 the security is sold cannot be identified) is inconsistent with section 446 and accordingly invalid. For the reasons stated below, we disagree with petitioner's contention and hold that, since the particular lot from which the Bearings stock was sold cannot be identified, respondent properly determined the bases of the Bearings stock by the FIFO method. Initially, we note that petitioner does not contend that section 1.1012-1(c)(1), Income Tax Regs., is invalid because it is unreasonable or inconsistent with section 1012. Granted that the FIFO rule "is an arbitrary one, and it may effect hardships," Vawter v. Commissioner,83 F.2d 11, 13 (10th Cir. 1936), affg. 31 B.T.A. 884 (1934), its adoption does not create a situation where the Commissioner has made an unreasonable choice among the available alternatives. Compare United States v. Cartwright,411 U.S. 546, 557 (1973). See also Fort Howard Paper Co. v. Commissioner,49 T.C. 275, 286 (1967), where *651 we expressly rejected the concept that "a taxpayer has a right to choose between alternative generally accepted methods of accounting or that respondent may not, under some circumstances, require a taxpayer to accept his determination as to a preferred selection among such alternatives." Cf. Thor Power Tool Co. v. Commissioner,439 U.S. 522 (1979), discussed infra at pp. 12-13. The validity of the FIFO regulation "has been recognized and is not open to question," Vawter v. Commissioner,supra; the regulation "provides a useful and reasonable rule for ascertaining what stock was sold in cases where there is no proof, or lack of satisfactory proof, of the fact." Helvering v. Rankin,295 U.S. 123, 130 (1935). See also Snyder v. Commissioner,295 U.S. 134 (1935). [2]
Petitioner's argument, however, takes a different *652 tack, namely, that the FIFO regulation is invalid because it conflicts with the general rule of section 446(a). We note that the adoption of petitioner's argument would have far reaching consequences. The Commissioner would be unable to apply any regulation (which did more than repeat the words of the Code) to compel a taxpayer to treat an item differently for tax and book purposes without first showing that the taxpayer's method of treating the item did not clearly reflect income. We do not believe that this interpretation of section 446 is mandated by the words of the section nor that this was Congress' intention in enacting section 446. Section 446(a) provides a general rule but, in many instances, the statute itself either requires or permits a taxpayer to treat a particular item differently for tax purposes than for book purposes. See, e.g., sections 162(f), 167, 265(2), 453, 456. In other instances, a Code provision explicitly empowers the Commissioner to promulgate regulations which may have the effect of requiring different treatment of an item for tax purposes. See, e.g., sections 471, 611. *653 If the Code requires that a particular item be treated differently for tax purposes than for book purposes, it is not a sufficient answer that the taxpayer's method of accounting for that item clearly reflects income.We believe section 1012 is an example of such a requirement.Congress provided that for tax purposes basis was cost. The Commissioner's regulation interprets this provision. Section 446, stating a general rule, is not controlling when a more specific section, here 1012, is applicable. In short, we are of the opinion that section 446(b) has no application whatsoever to the instant case. In any event, the FIFOregulation must be upheld if it "implement[s] the congressional mandate in some reasonable manner." United States v. Correll,389 U.S. 299, 307 (1967). The FIFO regulation provides a reasonable means of determining the basis of a security sold when the actual cost of *654 the security cannot be determined, see Helvering v. Rankin,supra, and, as previously pointed out, see p. 7, supra, its validity has long since been established. Moreover, since the regulation has been in effect almost as long as the income tax itself (it was originally promulgated under the Revenue Act of 1916) and Congress has re-enacted the statutory provision that "basis is cost" without substantial change, we should not declare it invalid in the absence of clear evidence that it is contrary to the Congressional intent. See Skinner v. Eaton,45 F.2d 568, 570 (2d Cir. 1930). Such evidence is lacking in this case. Compare Rowan Cos. v. United States,452 U.S. 247 (1981). We have considered the cases relied on by petitioner in support of its argument; they do not lead us to the conclusion that we should not apply FIFO in this case.We recognize that, in upholding the FIFO rule in Snyder v. Commissioner,supra, the Supreme Court mentioned in a footnote that-- Snyder does not attempt to bring himself within the general rule * * * that "net income shall be computed * * * in accordance with the method *655 of accounting regularly employed in keeping the books of such taxpayer." Neither does he state that the method he now suggests was followed in his return. [295 U.S. at 141 n. 5.] Contrary to petitioner's assertion, however, we do not read this footnote as implying that the Court would have precluded the Commissioner from applying FIFO had the taxpayer shown that he used average cost on his books. Petitioner has not cited, nor has this Court's own research located, any cases permitting basis to be determined by average cost because the taxpayer so determines basis for book purposes. The courts, however, have sustained the use of FIFO over average cost without making any reference as to the method used by the taxpayer in keeping his books. See, e.g., Skinner v. Eaton,supra.
Petitioner argues that in Huntington Securities Corp. v. Busey,112 F.2d 368 (6th Cir. 1940), the taxpayer's method of accounting for inventories was upheld because it clearly reflected income even though the taxpayer's method did not comply with any of the three accounting methods specifically required by the regulations. Petitioner argues that, on *656 the authority of Huntington Securities, we should uphold its use of average cost since, so petitioner contends, it clearly reflects income. In Huntington Securities, however, the court found that the differences between the method used by the taxpayer and that urged by the Commissioner were "unsubstantial." 112 F.2d at 371. This is not true in the instant case. A comparable situation existed in Madison Gas & Electric Co. v. Commissioner,72 T.C. 521 (1979), also relied upon by petitioner. Nor is our opinion in Fort Howard Paper Co. v. Commissioner,49 T.C. 275 (1967), dispositive of the issue before us. In that case, the issue was whether section 263 applied so as to require capitalization of certain expenses. To determine whether section 263 was applicable, we considered section 446. In the present case, there is no question but that section 1012 applies -- petitioner's basis is cost. The issue here is interpreting the meaning of "cost" in section 1012. We hold that the regulation under section 1012 validly defines "cost" for the purposes of this case. [3]
*657 Petitioner also cites several cases to support its assertion that the Commissioner cannot change a taxpayer's method of accounting without first alleging that the taxpayer's method does not clearly reflect income. See, e.g., Photo-Sonics, Inc. v. Commissioner,357 F.2d 656 (9th Cir. 1966), affg. 42 T.C. 926 (1964); John Wanamaker Philadelphia, Inc. v. United States,175 Ct. Cl. 169, 359 F.2d 437 (1966); Glenn v. Kentucky Color & Chemical Co.,186 F.2d 975 (6th Cir. 1951). These cases, however, deal with situations where no authority existed in the Code or the regulations, other than sections 446(b), 471, or their predecessors, for respondent's assertion that the taxpayer treat an item differently for tax than for book purposes. With respect to sections 446 and 471, Congress explicitly made relevant the issue of whether the taxpayer's method clearly reflects income. We do not believe those cases require that, when an otherwise valid regulation compels particular treatment of an item for tax purposes, the respondent must allege that the taxpayer's method, in addition to being contrary to the regulations, also fails *658 to clearly reflect income. Aside from the fact that we have concluded that section 446(b) has no application to the instant case (see p. 9, supra), even if it did, placement of such a burden on the respondent would fly in the face of Thor Power Tool Co. v. Commissioner,439 U.S. 522 (1979). In that case, the taxpayer's write-down of inventory failed to come within the permissible limits of respondent's regulations. The taxpayer contended that its write-down practice conformed with generally accepted accounting practices and clearly reflected income, with the result that a presumption was created in its favor, and that consequently the burden shifted to respondent to overcome that presumption and to show that its write-down did not clearly reflect income. The Supreme Court flatly rejected any such presumption and further stated that even if such a presumption had been found to exist, it would have to yield in the face of the contrary position embodied in respondent's regulations. See 439 U.S. at 540-544. While we recognize that the broad authority of the Commissioner with respect to inventories by virtue of section 471 can be a basis for distinguishing *659 Thor Power Tool, we think such a distinction may be more theoretical than real and that, even if section 446(b) were applicable herein, the teachings of Thor Power Tool would clearly be in point. We conclude that petitioner's bases in the Bearings stock are properly determined by FIFO. The parties have stipulated that, if FIFO is used to compute the cost of the Bearings stock, "passive investment income" constituted 20.87 percent of petitioner's gross receipts in the taxable year ended October 31, 1973. Accordingly, respondent asserts that, pursuant to section 1372(e)(5), petitioner's subchapter S election terminated for that year and for the taxable years subsequent thereto. [4] Petitioner, however, argues that if, as section 481(b) requires, the increase in taxable income for 1973 resulting from an accounting method change is spread over 1973 and the previous two years, then the 20-percent passive investment income test has not been violated. *660 Even were section 481(b) applicable to this case, [5] petitioner misinterprets its effect. Section 481(b) provides that, when a taxpayer's method of accounting is changed and certain requirements are fulfilled, the tax attributable to such increase in taxable income shall not exceed the tax which would have resulted if the adjustment had been included ratably in the taxable income for the year of the change and the two preceding years. Section 481(b) applies only to the amount of tax imposed on a given amount of taxable income; it does not affect the amount of the income itself. Thus, section 481(b) does not prevent the termination of petitioner's subchapter S election. Petitioner argues that, even if we decide that section 481(b) does not prevent the termination of its election, it is entitled to the benefits of section 481(b) in computing its tax for the year ended October 31, 1973. Section *661 481(b) requires (1) that the method of accounting from which the change is made was used by the taxpayer for the previous two taxable years in computing his taxable income and (2) that the increase in taxable income for the year of the change which results by reason of the adjustments required by section 481(a)(2) exceeds $ 3,000. Petitioner is not entitled to the benefits of section 481(b) because it has not shown that its taxable income in 1973 as determined by respondent includes adjustments in excess of $ 3,000 "which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted." (Emphasis added.) See section 481(a)(2). Admittedly, petitioner's taxable income for 1973 as determined by respondent differs by more than $ 3,000 from the taxable income as reported by petitioner. This difference, however, is not attributable to adjustments necessitated solely by a change in accounting method to prevent amounts from being duplicated or omitted. The increase in petitioner's 1973 taxable income is solely attributable to respondent's use of FIFO for securities sold in 1973; it is not attributable to adjustments necessitated *662 by petitioner's use of the average-cost method in previous years and therefore does not involve the "treatment of a recurring material item" as to those securities. See and compare Electric & Neon, Inc. v. Commissioner,56 T.C. 1324, 1336-1338 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974). Finally, petitioner appeals to this Court's equity powers. Petitioner argues that respondent has acted unfairly in disallowing use of the average-cost method for only one security in the taxable year ended October 31, 1974, [6] and in not challenging the use of the average-cost method on prior audits of petitioner and its shareholder, Joseph Gann. Petitioner's accountant testified that previously audited returns contained gains and losses on the sale of securities with cost determined by the average-cost method and that respondent had not questioned the determination of those gains or losses. *663 In essence, petitioner asks us to apply the doctrine of equitable estoppel, something we have pointed out should be done only with the "utmost caution and restraint." See Estate of Emerson v. Commissioner,67 T.C. 612, 617 (1977). In Union Equity Cooperative Exchange v. Commissioner,58 T.C. 397 (1972), affd. 481 F.2d 812 (10th Cir. 1973), we made short shrift of arguments practically identical to those made by petitioner herein, stating, "The short and complete answer to petitioner's plea is that it is well established that the Commissioner is not estopped from challenging erroneously reported items where its agents have failed, in prior taxable years, to challenge similar erroneously reported items." 58 T.C. at 408. See also Automobile Club v. Commissioner,353 U.S. 180, 183-184 (1957); Madison Gas & Electric Co. v. Commissioner,72 T.C. at 554.[7]
*664 In sum, we uphold respondent's determination for each of the years in issue. In the absence of identification of the lot from which the security sales were made, petitioner's bases in the Bearings stock are properly determined by FIFO as prescribed by section 1.1012-1(c)(1), Income Tax Regs. Pursuant to section 1372(e)(5), Income Tax Regs., petitioner's election to be treated as a small business corporation is terminated for the taxable year ended October 31, 1973, and subsequent taxable years. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue and all references to Rules are to the Tax Court Rules of Practice and Procedure.↩
2. The judicial history relating to the FIFO regulation is set forth in detail in Haynes v. Commissioner,17 T.C. 772, 778-779↩ (1951).
3. We also note that Fort Howard Paper Co. v. Commissioner,49 T.C. 275 (1967), and Cincinnati, N.O. & Tex. Pac. Ry v. United States,191 Ct. Cl. 572, 424 F.2d 563 (1970) (which involved a similar interplay between sections 162, 263, and 446 and offer some support for petitioner's position herein) were decided prior to the Supreme Court's pronouncement in Thor Power Tool Co. v. Commissioner,439 U.S. 522↩ (1979).
4. Section 1372(e)(5) provides in pertinent part as follows: (A) Except as provided in subparagraph (B) [an exception not applicable here], an election under subsection (a) made by a small business corporation shall terminate if, for any taxable year of the corporation for which the election is in effect, such corporation has gross receipts more than 20 percent of which is passive investment income. Such termination shall be effective for the taxable year of the corporation in which it has gross receipts of such amount, and for all succeeding taxable years of the corporation. (C) For purposes of this paragraph, the term "passive investment income" means gross receipts derived from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this paragraph only to the extent of gains therefrom). Gross receipts derived from sales or exchanges of stock or securities for purposes of this paragraph shall not include amounts received by an electing small business corporation which are treated under section 331↩ (relating to corporate liquidations) as payments in exchange for stock where the electing small business corporation owned more than 50 percent of each class of the stock of the liquidating corporation.
5. Here again we assume that a "method of accounting" is involved. See p. 6, supra.↩
6. Petitioner asserts that respondent acted unfairly in challenging its method for computing cost on only one of twelve sales in 1974.Since petitioner admits, however, that its deficiency would be increased were its basis for the remaining eleven sales determined by the FIFO method, we do not think petitioner has reason to complain.↩
7. In Fort Howard Paper Co. v. Commissioner,49 T.C. 275, 286 (1967), we emphasized that the method of accounting utilized by the taxpayer had "been frequently applied by respondent in making adjustments to the taxable income of the same taxpayer (as distinguished from respondent's mere failure to object to the use by such taxpayer)"↩ (emphasis supplied) and even then utilized such activism by respondent as only one element to be taken into account.