ALLING & CORY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6606.   Promulgated June 28, 1927.

1. Amount of current advertising expense paid or accrued determined and deduction therefor allowed.

2. Amounts paid or accrued for an asset having a useful life and value extending beyond the year in controversy not allowed as a current ordinary and necessary expense.

*H. A. Mihills, C. P. A.* for the petitioner.
*Thomas P. Dudley, Jr., Esq.,* for the respondent.

This proceeding results from the determination of deficiencies for the fiscal years ended June 30, 1917, 1918, 1919, and 1920, aggregating $120,514.53. Errors are assigned as follows: (1) Failure to allow an addition to invested capital for the fiscal year 1920 for a sum of $400,000 paid in to the corporation for preferred stock on December 1, 1919; (2) the Commissioner disallowed a deduction for the fiscal year ended June 30, 1920, of $95,211.22, expended for advertising purposes; (3) the Commissioner deducted a tentative tax in determining current earnings available for dividends in the fiscal years 1917 and 1918; (4) in computing the 4 per cent tax for the fiscal year 1917, the failure to reduce the taxable net income for the fiscal period to the proportion applicable to the six-month period ended June 30, 1917, before deducting the excess-profits tax; (5) failure to compute the tax under section 328 of the Revenue Act of 1918 for the fiscal years 1918, 1919, and 1920; (6) failure to recognize the expiration of the period within which the deficiency for the fiscal year 1917 may be determined.

At the hearing, the respondent admitted error as concerns the first issue and agreed with petitioner to allow in invested capital for the fiscal year 1920, the effective average of $400,000 paid in for capital stock on December 1, 1919.

The fifth assignment of error was stricken from the petition on motion of respondent to make same more definite and certain, with leave for petitioner to file a petition incorporating an amended paragraph specifically stating the facts. This the petitioner failed to do, and the issue was abandoned. The sixth assignment of error was withdrawn by petitioner.

## FINDINGS OF FACT.

Petitioner is a New York corporation, with principal office located at Rochester, and is a wholesale dealer in paper. Its stock contains from 4,500 to 5,000 different types and grades of paper. In connection with the sale of paper, it is necessary to supply the trade with samples of the various grades made up in book form. New sample books are prepared and issued to the trade every few years. About February 1, 1919, work was commenced on a set of sample books containing all the types and grades of paper to be distributed, to be housed in permanent wooden cabinets. The cabinet was to be an open box with several compartments and drawers, the compartments to hold the loose-leaf binders in which were placed the samples of various grades of paper. The samples were to be placed in a permanent binder made from heavy binder's board and covered with library buckram. On each sheet was to be printed the name, grade, weight, color, and finish. A carefully prepared index was to accompany the samples, showing the prices of the product. Petitioner referred to the cabinet and contents as its sample cabinet, and to their customers they termed it "A Silent Salesman." A descriptive pamphlet was issued prior to the shipping of the cabinet and its contents, which reads as follows:

Within two or three days one of our "Silent Salesmen" will be sent to your office for the purpose of helping you select the right paper for every job of printing you may do.

These "Silent Salesmen" are in reality new, complete sets of paper samples arranged in loose-leaf binders, bound in Brown Library Buckram and furnished in a substantial oak cabinet.

The preparation of these samples has required considerably more than a year, and we, therefore, desire that every customer may secure full and complete service from his set.

To this end, we suggest that when your cabinet arrives, you look through each book carefully, read the information given on the index pages, and in general become acquainted with the plan and arrangement of the set. This will make you familiar with the location of the various stocks and enable you to turn to any sample without delay.

The samples are arranged in loose-leaf-form in order that they may be kept up to date at all times. From time to time, as new lines are added or changes made in other lines, new samples will be sent you for insertion in the books. In this way you can always feel sure that you have accurate samples of our stocks.

By June 30, 1920, the printing necessary to the indexing of the binders, had been practically completed, as well as the cutting, punching, and fitting of the sheets in the binders, and two sets of books had been received by petitioner. The first shipment of cabinets to the trade was made in July, 1920, and approximately 1,600 cabinets and contents had been shipped by December 31, 1920.

If the customer discontinued handling petitioner's product, it was the custom to reclaim the cabinet and contents, or if a customer withdrew from business, the cabinets and contents were reclaimed.

Petitioner kept its books of account on the accrual basis and charged on its books of account as of June 30, 1920, the sum of $115,750.66 as advertising expense, which sum included the cost of the cabinets and contents of $87,905.90, and $27,844.76 was current advertising expense for the fiscal year ended June 30, 1920.

In computing the 4 per cent tax for fiscal year ended June 30, 1917, the respondent deducted from the entire net income, $592,563.83, the profits tax, $65,660.81 (the same being one-half of an amount of profits tax—$131,321.62—computed for the full year), multipled the remainder by 4 per cent and added one-half of the product to the tax liability as representing the amount of the 4 per cent tax.

In computing the current earnings available for dividends, the respondent deducted tentative taxes as follows: for the fiscal year ended June 30, 1917, $83,892.61, and for the fiscal year ended June 30, 1918, $82,902.99. In computing invested capital, the respondent deducted amounts attributable to payment of dividends as follows: for the fiscal year ended June 30, 1917, for the dividend paid June 20, 1916, $92,928.90, and for dividend paid August 22, 1916, $45,781.94.

OPINION.

MILLIKEN: The second issue relates to the deduction claimed by petitioner for the fiscal year ended June 30, 1920, of amounts paid or accrued as so-called advertising expense. We have set forth in the findings of fact, the total amount paid or accrued and have accepted the analysis submitted by petitioner, i. e., $87,905.90, related to the cabinets and their contents and $27,844.76 related to current advertising expense. Of the latter sum, the respondent has allowed $20,539.44. The remainder of the sum paid or accrued for current advertising, or $7,305.32, should be allowed as a deduction.

A careful consideration of the evidence convinces us that the cabinets and contents had a useful life and value extending beyond the fiscal year ended June 30, 1920. It was the custom of petitioner to issue its book of samples every few years, and as early as February 1, 1919, it began to make plans for the issuance of a book of more permanent form in library buckram binding and to house it in a per-

manent oak cabinet. Practically all the cabinets and contents are, to this day, in the hands of its customers, and one of the witnesses testified as to the value of its "Silent Salesmen" as follows:

We considered it of much more value than a corps of salesmen because without it we could not really do business.

The cabinet and its contents was more than a mere current advertising display and its value in use attaches to a considerable extent directly to the production of income over the years of its useful life. We were not advised as to the exact useful life of the cabinets or of the contents that were housed therein. The respondent did not err in his refusal to allow the deduction claimed.

In the third issue, the action of the respondent in reducing current earnings available for dividends, through the accrual of a tentative tax, was in error. *Appeal of L. S. Ayers & Co.*, 1 B. T. A. 1135.

In the fourth issue, the action of the respondent is sustained. *Appeal of Yokohama Ki-Ito Kwaisha, Ltd.*, 5 B. T. A. 1248.

> *Judgment will be entered on 15 days' notice, under Rule 50.*