The **CINCINNATI, NEW ORLEANS AND TEXAS PACIFIC RAIL·WAY COMPANY**

v.

The **UNITED STATES.**

No. 91–63.

United States Court of Claims.
April 17, 1970.
As Amended April 24, 1970.

Daniel M. Gribbon, Washington, attorney of record, for plaintiff. Andrew W. Singer and Covington & Burling, Washington, D. C., of counsel.

Philip R. Miller, Washington, D. C., with whom was Asst. Atty. Gen., Johnnie M. Walters, for defendant. Ira M. Langer, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

### PER CURIAM:*

This is an income tax refund suit based upon the alleged improper assessment of deficiencies by the Commissioner of Internal Revenue for the taxable years 1947, 1948 and 1949. The assessments were paid, refunds claimed and denied in due course by the Commissioner, and this suit filed by the plaintiff within the statutory permissible period.

The material facts are set forth at length in the findings of fact accompanying this opinion and will be summarized here for consideration of the controlling legal principles.

Plaintiff, The Cincinnati, New Orleans and Texas Pacific Railway Company, during the period in question, operated a railroad as a common carrier in interstate commerce, and as such was subject to the supervision of the Interstate Commerce Commission (ICC). It has consistently reported its income for tax purposes in accordance with the accrual method on a calendar year basis.

In its regulation of rail carriers the ICC has long required that financial statements be prepared in compliance with its "General Instructions of Accounting Classifications." From January 1, 1921 to Janury 31, 1940, the ICC required that in accounting for purchases of property (other than track) of less than $100, the railroads should charge the expenditure to operating expenses rather than to a capital amount.[1] This procedure is referred to as a "minimum rule."

In 1940 the ICC, after consideration of the economic condition of the railroads, determined that the minimum rule should be raised from $100 to $500. This change was made in light of the ICC's overall duty to protect the public. In the setting of reasonable railroad rates in the public interest it is imperative that the accounting methods prescribed by the "General Instructions of Accounting Classifications" lead to financial statements that clearly reflect income. In accordance with this consideration, the ICC concluded that the $500 amount, when considered in relation to the railroads' volume of business and volume of small items acquired, would allow the elimination of detailed, expensive bookkeeping without adversely impairing the ability of the financial statements to clearly reflect income.[2]

The minimum rule in force during the years in question applied to the acquisition of property other than land, sections of track and "units of equipment" such as freight cars, locomotives, passenger cars or work cars. It further provided that:

\* \* \* \* \* \*

(b) The carrier shall not parcel expenditures or retirements under a general plan for the purpose of bring-

---

\* This opinion incorporates the opinion prepared by Trial Commissioner William E. Day, with very minor changes and some additional material.

1. From July 1, 1914 to July 1, 1915, a similar rule was in effect except that the amount was set at $200.

2. Without a minimum rule the railroads would be required to charge each item or group of items purchased to an asset account. The useful life of the items would need to be determined and a depreciation account established so that a ratable amount of the cost could be charged off during each accounting period. When the items were retired, entries would be required to eliminate both the asset and depreciation accounts from the ledger. Furthermore, periodic valuation of the property would be required for ICC purposes. The institution of a minimum rule eliminates the need for all such accounting and reporting.

ing the accounting therefor within this rule, neither shall it combine unrelated items of property for the purpose of excluding the accounting therefor from the rule.

[General Instructions of Accounting Classifications (1943 ed.)].

Upon auditing plaintiff's income tax returns for the years 1947, 1948 and 1949, the Commissioner of Internal Revenue disallowed the expense deduction taken for minimum rule items which cost in excess of $100 each.

Although the defendant has proffered a number of justifications for the disallowance by the Commissioner of the claimed deductions, the essence of its position seems to rest on a few specific arguments.[3] Initially and with most force, defendant argues that the resolution of this litigation is controlled by section 24(a) (2) of the Internal Revenue Code of 1939 and Treas.Reg. 111, § 29.41–3(2). These pronouncements are as follows:

SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

\* \* \* \* \* \*

(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate \* \* \*.

[Internal Revenue Code of 1939, § 24(a) (2).]

Treas.Reg. 111 (1939 Code):

(2) Expenditures made during the year should be properly classified as between capital and expense; that is to say, expenditures for items of plant, equipment, etc., which have a useful life extending substantially beyond the year should be charged to a capital account and not to an expense account \* \* \*.

[Treas.Reg. 111, § 29.41–3(2).]

It is argued that since the items accounted for by the minimum rule admit-

3. In addition to the arguments discussed in the body of this opinion, based upon construction of the Internal Revenue Code of 1939 and appropriate Treasury regulations, the defendant asserted another position before the trial commissioner based upon an agreement reached in 1942 between the parties. That agreement referred to as the "terms letter" because it set the terms under which the Commissioner of Internal Revenue consented to the plaintiff's changing its method of accounting for certain numbered asset accounts from the retirement method (see Boston & Maine R. R. v. Commissioner of Internal Revenue, 206 F.2d 617 (1st Cir. 1953) and Rev.Rul. 67–22, 1967—1 Cum.Bull. 7) to the ratable depreciation method—requires, *inter alia*, "that complete depreciation accounting in accordance with all the applicable sections of the Internal Revenue Code and Regulations shall be adopted for these accounts \* \* \*." Since the accounts referred to above contained the same type of assets as those involved in this litigation (except that their cost was in excess of the amount prescribed by the minimum rule in effect at the time of their purchase or that they were excepted from minimum rule treatment for some other rea-

son), the defendant argued that the accounting for these after-acquired assets is required by the terms letter to be the same as that employed in accounting for the assets covered by the letter, i. e. the ratable depreciation method.

Plaintiff, on the other hand, asserted, and it is concluded that it is correct, that the terms letter requires only that "complete depreciation accounting" be employed with respect to those assets which under the Code are properly classified as capital expenditures rather than items properly includable in current operating expense. In other words, if an item is to be classified under the Code as a capital asset, the terms letter requires that it be accounted for under the complete depreciation method rather than some other permissible method.

The pivotal question for determination in respect to defendant's argument concerning the terms letter is, therefore, whether or not under the Code and applicable regulations the asset is properly one for capitalization or deduction as a current expense. This is precisely the same question which controls the outcome of this case without reference to the terms letter, and, therefore, the remainder of this opinion is without reference to the terms letter.

tedly had a useful life longer than one year, they necessarily constitute permanent improvements or betterments, and, therefore, must be capitalized.

In furtherance of this position defendant points out that the capitalization of assets such as furniture, office equipment and other small items is in harmony with a long line of cases deciding this question with respect to specific assets.[4] It is also noted that the Supreme Court has held in Old Colony R.R. Co. v. United States, 284 U.S. 552, 52 S. Ct. 211, 76 L.Ed. 484 (1932) that the accounting rules of regulatory agencies are not binding upon the Commissioner of Internal Revenue. In the same vein, it is defendant's position that under the Internal Revenue Code it is the nature of the property and not its cost which determines its classification as a capital expenditure or as a current operating expense.

Defendant's second major argument is that plaintiff cannot avail itself of the broad statements in section 41 of the Internal Revenue Code of 1939 and Treas. Reg. 111, § 29.41–(3), which are set out in the accompanying footnote [5] because the minimum rule does not constitute a "method of accounting." Furthermore, assuming arguendo that the minimum rule constitutes such a method of accounting, defendant asserts that, "[w]here the treatment of expenditures made to acquire depreciable capital assets is concerned, the method of accounting provisions play no part in the allocation between current and deferred deductions. The capital expenditure and depreciation deduction provisions [§ 24(a) (2)] of the Code establish not only what may be deducted but also the timing of the deduction * * *."

For the following reasons these arguments of the defendant cannot be accepted.

 The core of defendant's position that since the items in question admittedly have a useful life in excess of one year, the accounting for them must be in accordance with § 24(a) (2) which requires the capitalization of "permanent improvements or betterments" and with Treas.Reg. 111, § 29.41–3(2) which suggests the capitalization of items having a useful life which extends beyond the year in which they are purchased, is twofold. Primarily, it is an argument for an inflexible objective, *ipso facto* approach to the question of whether an asset is a capital item or one of current

4. Defendant cites the following cases: Hotel Kingkade v. Commissioner of Internal Revenue, 180 F.2d 310 (10th Cir. 1950) (hotel furnishings and equipment); Patricia Griswold, 21 T.C.M. 33 (1962) (printing dies and filing cabinets); F. A. Wilson, et al., 1 T.C.M. 571 (1943) (adding machine); Arthur J. Marks, et al., 9 B.T.A. 1047 (1928) (stock brokerage blackboard); Alling & Cory Co., 7 B.T.A. 574 (1927) (filing cabinets); Henry I. Brown, 4 B.T.A. 1129 (1926) (office furniture and equipment); Larrowe Milling Co., 3 B.T.A. 245 (1925) (typewriters, desks and chairs); Wemple State Bank, 1 B.T.A. 415 (1925) (bank posting machine).

5. "SEC. 41. GENERAL RULE.
 The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year."
 "SEC. 29.41–3. Methods of accounting. —It is recognized that no uniform method of accounting can be prescribed for all taxpayers, and the law contemplates that each taxpayer shall adopt such forms and systems of accounting as are in his judgment best suited to his purpose. Each taxpayer is required by law to make a return of his true income. He must, therefore, maintain such accounting records as will enable him to do so. * * *" [Treas.Reg. 111].

expense. That is to say, if an asset has a useful life greater than one year, or if it could be considered by itself to be a "permanent improvement" or "betterment", it must be capitalized automatically without consideration of any other factors. Secondly, defendant's position requires the conclusion that the method of accounting sections of the Code (sec. 41 of the 1939 Code and sec. 446 of the 1954 Code) are subordinate to the capital expenditure and depreciation sections of the Code (sec. 24 of the 1939 Code and sec. 263 of the 1954 Code).

Neither of these underlying precepts is acceptable. The first, the conclusiveness of the one year rule, simply does not square with basic philosophy concerning asset accounting as reflected in the regulations and in section 41. The opening sentence of section 41 permits the use of the taxpayer's regularly employed method of accounting in the computation of net income, as long as that method clearly reflects income. In harmony with this, Treas.Reg. 111, § 29.-41–3 recognizes that "no uniform method of accounting can be prescribed for all taxpayers, and the law contemplates that each taxpayer shall adopt such forms and systems of accounting as are in his judgment best suited to his purpose." The determinative question, therefore, is not what is the useful life of the asset in question, although that inquiry is relevant, but does the method of accounting employed clearly reflect income.

A recent case decided by the United States Court of Appeals for the Tenth Circuit, United States v. Wehrli, 400 F. 2d 686 (1968), considers the weight that is to be given to the rule that if an asset has a useful life in excess of one year it should be capitalized.[6] In his opinion Judge Murrah comments:

> This concept [the one year rule] has received rather wide acceptance, and we are urged to make arbitrary

application of it here. We think, however, that it was intended to serve as a mere guidepost for the resolution of the ultimate issue, not as an absolute rule requiring the automatic capitalization of every expenditure providing the taxpayer with a benefit enduring for a period in excess of one year. Certainly the expense incurred in the replacement of a broken windowpane, a damaged lock, or a door, or even a periodic repainting of the entire structure, may well be treated as a deductible repair expenditure even though the benefits endure quite beyond the current year. [400 F.2d at 689—footnote omitted.]

■ This position is in accordance with the intent of the Code and the regulations as expressed above, and one which this court adopts. Accordingly, in the resolution of the ultimate issue in this case, i.e., does the taxpayer's method of accounting clearly reflect income, the one year rule will be given adequate, though not conclusive, weight.

Apparently in order to prevent the conclusion that the one year rule is but one test in deciding whether the accounting for an asset is proper, defendant contends that if there is a conflict between the capitalization and depreciation sections and the methods of accounting sections the former must be given preeminence. If this were so, the one year rule which is an adjunct of the capitalization and depreciation sections would be carried along to a dominant, if not determinative position. This contention is likewise rejected.

In a recent case concerning the proper allocation of overhead costs in regard to self-constructed assets, Judge Tannenwald, of the Tax Court of the United States, dealt with the exact contention raised by the defendant herein:

> We reject as without merit respondent's contention that section 263 of

---

6. United States v. Wehrli, *supra*, concerns the application of the one year rule in the context of repairs to already existing assets rather than in the context of

recently acquired assets. This difference, however, does not alter the analytical position taken by the Tenth Circuit with respect to the case presently at bar.

the Code is in and of itself dispositive of the issue before us. By requiring the capitalization of amounts "paid out *for* new buildings or *for* permanent improvements or betterments made to increase the value of any property," such section begs the very question we are asked to answer. We are satisfied that, under the circumstances involved herein, sections 263 and 446 are inextricably intertwined. A contrary view would encase the general provisions of section 263 with an inflexibility and sterility neither mandated to carry out the intent of Congress nor required for the effective discharge of respondent's revenue-collecting responsibilities. Accordingly, we turn to a determination as to whether petitioner's method of accounting "clearly reflects income" pursuant to the provisions of section 446. [Fort Howard Paper Co., 49 T. C. 275, 283–284 (1967).] [7]

This court agrees that the capitalization and depreciation provision, section 24, and the method of accounting provision, section 41, are "inextricably intertwined" and must be utilized in conjunction in deciding the ultimate question of the success of the taxpayer's method in clearly reflecting income.

By the same token, one cannot rigidly and automatically allocate expenditures as "amounts paid for * * * permanent improvements or betterments" simply by looking at the nature of the item in isolation, and without regard to particular circumstances, the taxpayer's method of accounting, and its consistent practice. Like the concept of "repair", neither the term "ordinary and necessary" nor its opposite, "permanent improvements or betterments", can be given a "narrow, restricted, dictionary-type meaning." *See* Kennecott Copper Corp. v. United States, 347 F.2d 275, 304, 313, 171 Ct.Cl. 580, 629–630, 643–44 (1965). Three earlier comments by the Tax

Court point up these basic propositions: "In the ordinary conduct of a manufacturing business the differentiation of capital expenditures and operating expense disbursements is largely a matter of sound discretion and experienced business judgment. The dividing line between the two classes cannot be defined by statute, and so far as has come to our attention, no court has ever yet attempted to make a definition that can apply to any case except the one under review * * *." American Seating Co., 4 B.T.A. 649, 657–668 (1926). "An item which may be classified as a capital expenditure under certain circumstances may, under different facts and circumstances, be considered expense." Libby & Blouin, Ltd., 4 B.T.A. 910, 914 (1926). "One taxpayer might be justified in capitalizing an expenditure for a mattress or a rug, whereas another, operating on a larger scale and with substantially identical recurring expenditures, might be justified in deducting the expenditure as an expense, if it consistently followed such a system of accounting and reporting its income." Manger Hotel Corp., 10 T.C. 520, 522 (1948). The Government has itself recognized that circumstances do make a difference by long ago promulgating, for instance, regulations allowing taxpayers operating mines to expense the cost of minor (later, all) items of plant and equipment necessary to maintain the mine's normal output. See Regs. 45, Art. 222 (1920); Regs. 111, § 29.23(m)–15(b); Treas. Reg. § 1.612–2(a).

We turn now to the ultimate question in this case, does the taxpayer's system of accounting which employs the minimum rule clearly reflect income in taxpayer's circumstances.

Plaintiff has introduced substantial expert accounting evidence, both the testimony of experts and numerous texts on the subject, which leads to the conclusion that the minimum rule as promul-

---

7. Section 263(a) (1) of the Internal Revenue Code of 1954 corresponds to section 24(a) (2) of the 1939 Code and section 446 is the 1954 equivalent of section 41.

gated by the ICC and employed by the railroad is in accordance with generally accepted accounting principles. There is, however, a question raised as to the weight that is to be given, for tax purposes, to the finding that the method of accounting employed is one that is generally accepted by the accounting profession. Defendant points to *Schlude v. Commissioner of Internal Revenue*, 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633 (1963) and *American Automobile Ass'n v. United States*, 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961) for the proposition that merely because the "method" taxpayer employs is in accordance with generally accepted accounting principles does not mean "that for income tax purposes it so clearly reflects income as to be binding on the Treasury." *American Automobile Ass'n, supra*, at p. 693, 81 S.Ct. at p. 1730.

■ While the *American Automobile Ass'n* and *Schlude* decisions held that in the limited context of the accounting for received but unearned income the generally accepted method of accounting for such receipts does not clearly reflect income for tax purposes, those cases do not establish a general rule abrogating the presumption of correctness afforded by the regulations, Treas.Reg. 111, § 29.-41–2, Treas.Reg. 1.446–1(a) (2),[8] to generally accepted accounting methods. *Schlude* and *American Automobile Ass'n* are based on the peculiar statutory history of the treatment by Congress of unearned, received income, and on the finding that for tax purposes the generally accepted methods treated such income in an "artifical" manner. *Schlude*

v. *Commissioner of Internal Revenue, supra,* 372 U.S. at 134–137, 83 S.Ct. 601. Neither of these conditions is evident in the case at bar, and therefore, while the cases are instructive in a general way, they are not determinative. In light of this discussion, however, it should be noted that because it is found in this case as a matter of fact that the methods employed by the plaintiff clearly reflect income, this court need not resolve the question of the proper weight to be given generally accepted methods of accounting beyond the mere statement that in considering the ultimate question of clearly reflecting income the use of generally accepted methods of accounting is entitled to some probative value. See, *John Wanamaker Philadelphia, Inc. v. United States*, 359 F.2d 437, 441, 175 Ct.Cl. 169, 177 (1966).

■ Another fact which is entitled to appropriate probative value, but which is not conclusive, is the establishment by the ICC of the $500 minimum rule after careful consideration of the railroads' economic position. The testimony reveals that one of the prime considerations of the ICC in establishing the minimum rule was its effect on the ability of the railroads' financial statements to clearly reflect income. The ICC concluded that the imposition of the $500 minimum rule would not distort income. Although the accounting procedures required by the ICC are not binding upon the Commissioner of Internal Revenue, *Old Colony R.R. v. Commissioner of Internal Revenue*, 284 U.S. 552, 562, 52 S.Ct. 211, 76 L.Ed. 484 (1932), they are entitled to probative weight in the ap-

---

8. Treas.Reg. 111, § 29.41–2:

"**Bases of computation and changes in accounting methods.**—Approved standard methods of accounting will ordinarily be regarded as clearly reflecting income. * * * "

Treas.Reg. § 1.446–1(a) (2):

"(2) It is recognized that no uniform method of accounting can be prescribed for all taxpayers. Each taxpayer shall adopt such forms and systems as are, in his judgment, best suited to his needs. However, no method of accounting is

acceptable unless, in the opinion of the Commissioner, it clearly reflects income. A method of accounting which reflects the consistent application of generally accepted accounting principles in a particular trade or business in accordance with accepted conditions or practices in that trade or business will ordinarily be regarded as clearly reflecting income, provided all items of gross income and expense are treated consistently from year to year."

propriate case. Northern Natural Gas Co. v. O'Malley, 277 F.2d 128, 137–138 (8th Cir. 1960); Portland General Electric Co. v. United States, 189 F.Supp. 290, 298 (D.Ore.1960), aff'd. 310 F.2d 877 (9th Cir. 1962).

The most convincing evidence that the Commissioner has abused his discretion in prohibiting the plaintiff from treating items with a useful life in excess of one year which cost less than $500, not as "permanent improvements or betterments" but as current operating expenditures, is the statistical analysis proffered by the plaintiff which indicates the relationship of the quantum of minimum rule expenses to other substantial income and balance sheet figues.

Plaintiff's exhibit 1, which is reproduced in the accompanying findings of fact,[9] is a compilation of significant data for the 17-year period from 1940 to 1956. With the exception of two categories of data, one of which determines what the plaintiff's depreciation deduction would have been had it employed the defendant's methods using an average useful life of 15 years, the other using an average useful life of 10 years, all figures used therein are actual figures taken from the plaintiff's records. This data reveals the following convincing relationships:

1. For the 17-year period, the minimum rule expenses disallowed by the Commissioner represented less than $9/100$ of 1 percent of the plaintiff's operating expenses.

2. In no given year did the disallowed minimum rule expenses represent more than $1/10$ of 1 percent of the yearly operating expenses.

3. For the years in question, 1947, 1948 and 1949, the disallowed minimum rule expenses represented $9/100$ of 1 percent, $4/100$ of 1 percent and $1/10$ of 1 percent of the yearly operating expenses, respectively.

4. For the 17-year period, the disallowed minimum rule expenses repre-

sented less than 1 percent of the plaintiff's total depreciation deduction.

5. In no given year did the disallowed minimum expenses represent more than 2 percent of the yearly depreciation expense.

6. For the years in question, 1947, 1948 and 1949, the disallowed minimum rule expenses represented $2/10$ of 1 percent, $1/10$ of 1 percent and $3/10$ of 1 percent of the plaintiff's net income.

7. For the 17-year period the disallowed minimum rule expenses represented $4/10$ of 1 percent of the plaintiff's total capital expenditures and $2/10$ of 1 percent of its total investment at the end of each year.

8. Over the 17-year period the amount of disallowed minimum rule expenses remained relatively constant, particularly when related to the yearly total operating expenses or to the yearly net income.

9. If the plaintiff had reported its income in accordance with the method of accounting insisted upon by the Commissioner and depreciated minimum rule assets over a 15-year period, its income for 1947, 1948 and 1949 would have been increased by $5,400, $3,149 and $15,971 in each respective year. This is $7/100$ of 1 percent, $3/100$ of 1 percent and $2/10$ of 1 percent more than the income computed by the plaintiff in accordance with the minimum rule in each respective year.

If a 10-year useful life is employed in making the above comparison both the absolute and relative differences between the different methods is reduced.

10. Stating number 9 above in a somewhat different manner, it is significant that both on a year-to-year basis and on a 17-year overall basis, the disallowed minimum rule expenses are fairly similar to the amount of depreciation that would have been al-

9. Finding 36.

lowed under the defendant's method. Over the 17-year period plaintiff expensed $229,810 of minimum rule items. If it had employed the defendant's method and a 10-year useful life, plaintiff would have been entitled to total ratable depreciation deductions of $175,806 for items covered by the minimum rule. If the useful life employed had been 15 years, total ratable depreciation deductions of $157,599 would have been allowed. When compared with the total operating expense, total depreciation deductions claimed, or the total net income of the plaintiff, the differences between the depreciation deductions computed under plaintiff's and defendant's methods are so minute as to become unfathomable. This observation is accentuated when it is realized that had plaintiff employed the Commissioner's method, substantial additional clerical expense would have been incurred, thus reducing the already small difference between net income as computed under each of the parties' respective methods.

11. A final observation discernible from plaintiff's exhibit is that the plaintiff's method of accounting for small items does not always lead to less taxable income; there are years where it is clear that the minimum rule has generated a lower deduction than would have been proper under the ratable depreciation method. It would seem that over the long run the total amounts deductible would be similar and the main question involved is the timing of the deduction.

■ It is also pertinent that plaintiff's federal income tax returns for 1921 through 1939, in which the ICC minimum rule was consistently applied, were accepted on audit by the Internal Revenue Service, and also that on audit of the plaintiff's returns for the years in issue (1947–1949) the Service in effect applied a $100-minimum rule. The defendant argues that these were mere administrative actions by the agents, un-

confirmed by their superiors. It is clear, however, that the agents' acceptance, in substance, of a $100 minimum rule was neither aberrant nor contrary to any regulation, ruling, or directive, but was on the contrary countenanced for railroads by the Service. We cite this not at all as a matter of estoppel, but rather for "the persuasiveness of prior experience in determining the classification of the * * * expenditures as expenses, current or deferred." Kennecott Copper Corp. v. United States, supra, 347 F.2d at 303, 171 Ct.Cl. at 628. Indeed, we see nothing in the Code to preclude the Treasury and the Service from adopting, by regulation or other binding directive, a reasonable minimum rule for those taxpayers, or classes of taxpayers, whose accounting methods and circumstances are determined to warrant such treatment. Where the burden on both taxpayers and Service to account for each item of property separately is great, and the likelihood of distortion of income is nil or minimal, the Code is not so rigid and so impracticable that it demands that nevertheless all items be accounted for individually, no matter what the trouble or the onus. The discussion earlier in this opinion shows that no provision in the Code is so inflexible as to call for that intractable a result.

As our findings show, the situation here would support such an explicit directive for this taxpayer. The burden on plaintiff, if the minimum rule is not to be followed for income tax purposes, would be heavy; at the same time, the clearer reflection of income would be exceedingly slight if there were any at all. It is obvious that, for comparable reasons, the Internal Revenue Service accepted for years a $100 minimum rule without demur. On the showing here, there is no adequate reason why the $500 minimum rule should not have been accepted for the years in question.

■ In summary, it is concluded that the items costing less than $500 are not of such nature or character in relation

to the plaintiff's business to constitute permanent improvements or betterments as is contemplated by section 24(a) (2) of the Internal Revenue Code of 1939. Furthermore, plaintiff's method of accounting for items costing less than $500 is in accordance with generally accepted accounting principles and is not such that it inhibits the ability of plaintiff's financial statements to clearly reflect income for tax purposes.

Defendant's additional points that the Commissioner's disallowance of plaintiff's minimum rule is in accordance with a long line of cases, fn. 4, *supra,* dealing with similar assets, and that the treatment employed by the plaintiff is not such that it constitutes a method of accounting so as to be sanctioned by section 41 and Treas.Reg. 111, § 29.41-3, are not tenable.

The short answer to the method of accounting proposition is that while no definition of the phrase "method of accounting" can be found in the regulation under the 1939 Code, the regulation to sec. 446 of the 1954 Code, which section corresponds to sec. 41 of the 1939 Code, provides that "[t]he term 'method of accounting' includes not only the overall method of accounting of the taxpayer but also the accounting treatment of any item."

■ There is no reason why this definition is not equally applicable to cases controlled by the 1939 Code. Accordingly it is concluded that the minimum rule constitutes a method of accounting as contemplated by section 41 and Treas.Reg. 111, § 29.41-3.

The second proposition that a long line of cases dealing with similar assets controls the outcome of this case is answered by Treas.Reg. 111, § 29.41-3. That section recognizes that different taxpayers require different types of accounting systems, provided that the system each employs clearly reflects income. Since it has been concluded that the methods employed by the plaintiff clearly reflect income and that the system of accounting is a somewhat individual

matter, cases dealing with other taxpayers in other situations, although instructive, are far from binding in this instance.

■ Finally, defendant urges that, in any event, the use of a $500 minimum rule in place of the former $100 rule constituted an unauthorized change in accounting method because it was made without the approval of the Commissioner of Internal Revenue. See Regs. 111, § 29.41-2; Hackensack Water Co. v. United States, 352 F.2d 807, 173 Ct.Cl. 606 (1965). But the only change needing the Service's assent is a substantial or material one. See Commissioner of Internal Revenue v. O. Liquidating Corp., 292 F.2d 225, 230 (3rd Cir.), cert. denied, 368 U.S. 898, 82 S.Ct. 177 (1961); S.Rep. No. 1622, 83d Cong., 2d Sess. 300 (on the 1954 Code provision). The raising of the dollar limitation from $100 to $500 in this instance had only a very slight effect on net income, and moreover came about because of a change, not in accounting method, but in the underlying facts, i. e., the increase in business occasioned by World War II. The relevant regulations proposed on this point for the 1954 Code make it clear that this kind of change does not call for approval. Proposed Treasury Regulations under § 446(e) of the 1954 Code, § 1.446-1(e) (2) (ii) (b), (c) and (2) (iii), Example 4, 33 Fed.Reg. 18936, 18937 (1968). It is also worth pointing out, in this connection, that the requirement of obtaining the Service's consent under § 446(e) could prevent or screen the wholesale adoption of a minimum rule by taxpayers not already using one—a result which the defendant says it fears if we uphold plaintiff. The Service can, of course, restrict use of the rule to those taxpayers whose circumstances sustain adoption of such a method and who also meet the stringent requirement of nondistortion of income met by the plaintiff here.

For the reasons stated, it is concluded that the Commissioner of Internal Revenue has abused his discretion under sec-

tions 24 and 41 of the Internal Revenue Code of 1939 in disallowing the use of the minimum expense rule, and therefore, plaintiff is entitled to recover.[10]

10. In its answer, defendant, by way of set-off, alleged that plaintiff was not entitled to Mexican foreign tax credits taken in its federal income tax returns for 1947, 1948 and 1949. At this time, the parties are considering the settlement of this issue. Therefore, plaintiff's recovery is to be reduced by any set-off agreed upon in the settlement proceedings.