T.C. Memo. 2001-149

UNITED STATES TAX COURT

ALACARE HOME HEALTH SERVICES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9566-99.                    Filed June 22, 2001.

<u>Robert C. Walthall</u>, for petitioner.

<u>Marshall R. Jones</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's Federal income tax of $136,895 for 1995 and $58,726
for 1996 and accuracy-related penalties under section 6662(a) of
$27,379 for 1995 and $11,745 for 1996.

After concessions,[1] the issues for decision are:

1.    Whether petitioner, an accrual-basis taxpayer, may expense in 1995 and 1996 the cost of assets that each cost less than $500 and that have a useful life of more than one year, or whether petitioner must capitalize the cost of those assets.  We hold that it must capitalize those costs.

2.    Whether petitioner is liable for the accuracy-related penalty for substantial understatement of income under section 6662(a) for 1995 and 1996.  We hold that it is not.

Section references are to the Internal Revenue Code in effect during the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.    Petitioner

Petitioner is a Medicare-certified home health care agency whose principal place of business was in Birmingham, Alabama, when it filed the petition in this case.  Petitioner uses the accrual method of accounting.

---

[1]  Respondent concedes that the 1996 adjustment for office expenses should be $247,413 rather than $259,062.  Due to a mathematical error in the notice of deficiency, the 1995 computer expenses adjustment should be $104,806 rather than $101,806.

B.   Medicare Guidelines

The Federal Health Care Financing Administration (HCFA) reimburses certified home health care agencies, such as petitioner, for the reasonable costs of providing home health care services to Medicare beneficiaries.  About 98-99 percent of petitioner's revenues are Medicare reimbursements.

Petitioner must comply with accounting guidelines contained in the Medicare Provider Reimbursement Manual (HCFA Publication 15-1) (the manual) and must submit to annual compliance audits of its books and records by one of Medicare's fiscal intermediaries. The manual contains guidelines concerning providers' capitalization and expensing policies.  Those guidelines state:

> 108. GUIDELINES FOR CAPITALIZATION OF HISTORICAL COSTS
>      AND IMPROVEMENT COSTS OF DEPRECIABLE ASSETS
>
> 108.1  Acquisitions.-If a depreciable asset has at the
> time of its acquisition an estimated useful life of at
> least 2 years and a historical cost of at least $500,
> its costs must be capitalized, and written off ratably
> over the estimated useful life of the asset, using one
> of the approved methods of depreciation.  If a
> depreciable asset has a historical cost of less than
> $500, or if the asset has a useful life of less than 2
> years, its cost is allowable in the year it is acquired
> * * *.
>
> The provider may, if it desires, establish a:
> capitalization policy with lower minimum criteria, but
> under no circumstances may the above minimum limits be
> exceeded.  For example, a provider may elect to
> capitalize all assets with an estimated useful life of
> at least 18 months and a historical cost of at least
> $400.  However, it may not elect to only capitalize
> assets with a useful life of at least 3 years and a
> historical cost of more than $600.

C.  Medicare Guidelines and Petitioner's Expensing Policy

Petitioner was incorporated in 1982.  Since then, petitioner has expensed all capital items for which it paid less than $500.  Petitioner followed that practice in 1995 and 1996.  Its expensing policy complies with Medicare guidelines for the capitalization of depreciable assets described above.

The following chart shows the number, total cost, and average cost of office items petitioner bought in 1995 and 1996 which have an expected useful life of one year or longer and which cost less than $500 (the disputed assets):

|  | 1995 | 1996 |
| --- | --- | --- |
| Number of office and computer items costing less than $500 each | 2,632 | 2,381 |
| Total cost of office and computer items | $467,944 | $351,543 |
| Average cost per item | 177.79 | 147.65 |

Petitioner's office items included bookcases, chairs, credenzas, desks, organizers, file cabinets, hutches, refrigerators, microwaves, serving carts, panels and accessories, tables, telephones, and typewriters.  Petitioner's computer items included modems, CD ROMs, hard drives, keyboards, motherboards, memory modules, outlets, processors, servers, software, and terminals.

D.   Petitioner's Income Tax Returns

Petitioner hired Pearlman, Nebben & Associates, an accounting firm that specializes in the health care industry, to prepare its 1995 and 1996 Federal corporate income tax returns. Petitioner's director of accounting and chief financial officer reviewed those returns for accuracy.

Petitioner reported gross receipts of $55,128,001 and $49,184,394, and taxable income of $284,062 and $420,950 on its 1995 and 1996 returns, respectively.

E.   The Notice of Deficiency

Respondent determined that petitioner's policy of expensing assets that cost less than $500 was not a proper method of accounting, and that petitioner must capitalize the cost of the disputed assets over their useful lives.[2]

OPINION

A.   Whether Petitioner Must Capitalize the Cost of the Disputed Assets

We must decide whether petitioner, an accrual basis taxpayer, must capitalize the cost of items that cost less than $500 and that have a useful life of more than one year.

1.   Section 263 and Section 446

In general, amounts paid to acquire machinery and equipment, furniture and fixtures, and similar property having a useful life

---

[2]   Respondent allowed depreciation for the disputed assets of $72,802 for 1995 and $178,819 for 1996.

substantially beyond the taxable year must be capitalized. See

sec. 263(a)(1); <u>Otis v. Commissioner</u>, 73 T.C. 671, 674 (1980),

affd. without published opinion 665 F.2d 1053 (9th Cir. 1981);

sec. 1.263(a)-2(a), Income Tax Regs.

Section 446 provides in pertinent part:

> SEC. 446(a).  General Rule.--Taxable income shall
> be computed under the method of accounting on the basis
> of which the taxpayer regularly computes his income in
> keeping his books.

> (b) Exceptions.--If no method of accounting has
> been regularly used by the taxpayer, or if the method
> used does not clearly reflect income, the computation
> of taxable income shall be made under such method as,
> in the opinion of the Secretary, does clearly reflect
> income.

2.   <u>Petitioner's Position</u>

Petitioner relies on <u>Cincinnati, New Orleans & Tex. Pac. Ry.

Co. v. United States</u>, 191 Ct. Cl. 572, 424 F.2d 563, 569 (1970);

and <u>Union Pac. R.R. Co. v. United States</u>, 208 Ct. Cl. 1, 524 F.2d

1343 (1975).  The taxpayers in <u>Cincinnati</u> and <u>Union Pacific</u> were

required by the Interstate Commerce Commission (ICC) to expense

purchases of certain property costing less than $500 (i.e., the

minimum rule expenses).  See <u>Cincinnati, New Orleans & Tex. Pac.

Ry. Co. v. United States</u>, <u>supra</u> at 565; <u>Union Pac. R.R. Co. v.

United States</u>, <u>supra</u> at 1347.  The Court of Claims held in both

cases that the taxpayer may deduct a de minimis amount of

expenses for low-cost capital assets having a useful life greater

than 1 year if the accounting method established by the ICC

clearly reflects income.  See <u>Cincinnati, New Orleans & Tex. Pac. Ry. Co. v. United States</u>, <u>supra</u> at 567-578; <u>Union Pac. R.R. Co. v. United States</u>, <u>supra</u> at 1347-1348.  The Court of Claims in <u>Cincinnati</u> relied on our prior rejection of the Commissioner's contention that section 263 is dispositive without considering section 446:

> We reject as without merit respondent's contention that section 263 of the Code is in and of itself dispositive of the issue before us.  By requiring the capitalization of amounts "paid out <u>for</u> new buildings or <u>for</u> permanent improvements or betterments made to increase the value of any property," such section begs the very question we are asked to answer.  We are satisfied that, under the circumstances involved herein, sections 263 and 446 are inextricably intertwined.

<u>Cincinnati, New Orleans & Tex. Pac. Ry. Co. v. United States</u>, <u>supra</u> at 568-569 (quoting <u>Fort Howard Paper Co. v. Commissioner</u>, 49 T.C. 275, 283-284 (1967)).  The Court of Claims in <u>Cincinnati</u> also said that "The determinative question, therefore, is not what is the useful life of the asset in question, although that inquiry is relevant, but does the method of accounting employed clearly reflect income."  <u>Id.</u> at 568.  The court noted that the disputed items were a minute fraction of the taxpayer's net income, yearly operating expenses, and yearly depreciation deduction.  See <u>id.</u> at 571.  The court concluded that the ICC's minimum expensing rule was in accordance with generally accepted accounting principles, see <u>id.</u> at 569-570, and that the taxpayer's financial statements clearly reflected income, see <u>id.</u>

at 572-573.  In <u>Union Pac. R.R. Co. v. United States</u>, <u>supra</u> at
1347-1348, the Court of Claims rejected the Commissioner's
attempt to distinguish <u>Cincinnati</u>.

Petitioner contends that, like the taxpayers in <u>Cincinnati</u>
and <u>Union Pacific</u>, its method of accounting clearly reflected its
income within the meaning of section 446, and that respondent's
attempt to change petitioner's accounting method was an abuse of
discretion.  Petitioner also contends that respondent cannot
change its method of accounting because petitioner has
consistently used an accounting method that clearly reflects
income.

3.   <u>Comparison of Facts in Cincinnati, Union Pacific, and
     This Case</u>

The following chart compares petitioner to the taxpayers in
<u>Cincinnati</u> and <u>Union Pacific</u> (to the extent a comparison can be
made based on the record in this case and the Court of Claims'
opinions in <u>Cincinnati</u>[3] and <u>Union Pacific</u>):

|  | <u>Cincinnati</u><br>(1947, 1948 and 1949) | <u>Union Pacific</u><br>(1942) | <u>Petitioner</u><br>(1995 and 1996) |
|---|---|---|---|
| 1. <u>Disputed Items</u> |  |  |  |
| Disputed items | $12,854<br>11,006<br>24,715 | $113,718 | $467,944<br>351,543 |

_____

[3]  See <u>Cincinnati, New Orleans & Tex. Pac. Ry. Co. v. United
States</u>, 191 Ct. Cl. 572, 600 (1970).  The numerical data from
<u>Cincinnati</u> can be found only in the Court of Claims reports.

2. <u>Taxable Income</u>[1]

| | | | |
|---|---|---|---|
| Taxpayer's<br>net taxable<br>income | 8,087,437<br>11,012,143<br>7,657,574 | | 284,062<br>420,950 |
| Disputed items/<br>Net taxable<br>income | .16%<br>.10%<br>.32% | | 165.0%<br>83.5% |

3. <u>Capital Expenses</u>

| | |
|---|---|
| Taxpayer's<br>total capital<br>expenses | 2,805,532<br>751,690<br>3,341,014 |
| Disputed items/<br>total capital<br>expenses | .46%<br>1.46%<br>.74% |

4. <u>Operating Expenses</u>[2]

| | | |
|---|---|---|
| Taxpayer's total<br>operating<br>expenses | 23,413,171<br>26,239,267<br>24,451,126 | 218,307,770 |
| Disputed items/<br>Yearly operating<br>expense | .06%<br>.04%<br>.01% | .05% |

5. <u>Total Investment Account</u>[3]

| | | |
|---|---|---|
| Taxpayer's total<br>investment<br>account | 71,305,124<br>75,626,528<br>75,813,924 | 442,726,752 |
| Disputed items/<br>Total investment<br>account | .02%<br>.01%<br>.03% | .03% |

6. <u>Depreciation</u>[4]

| | | |
|---|---|---|
| Disputed items/<br>total depreciation<br>expenses | 1.0%<br>.8%<br>1.8% | 288%<br>189% |

7. <u>Gross Receipts</u>

| | | |
|---|---|---|
| Taxpayer's gross<br>receipts | 34,854,625<br>40,272,864<br>36,180,454 | 55,128,001<br>49,184,394 |
| Disputed<br>items/gross<br>receipts | .04%<br>.03%<br>.07% | .85%<br>.71% |

[1] The ratio of the taxpayer's expenses for disallowed minimum rule items to its net taxable income was considered in <u>Cincinnati, New Orleans & Tex. Pac. Ry. Co. v. United States</u>, 424 F.2d at 571.

[2] The ratio of the taxpayer's expenses for disallowed minimum rule items to its yearly operating expenses was considered in <u>Cincinnati, New Orleans & Tex. Pac. Ry. Co. v. United States</u>, 424 F.2d at 571, and <u>Union Pac. R.R. Co. v. United States</u>, 524 F.2d at 1348.

[3] The ratio of the taxpayer's expenses for disallowed minimum rule items to its total investment account was considered in <u>Union Pac. R.R. Co. v. United States</u>, 524 F.2d at 1348.

[4] The ratio of the taxpayer's expenses for disallowed minimum rule items to its yearly depreciation expenses was considered in <u>Cincinnati, New Orleans & Tex. Pac. Ry. Co. v. United States</u>, 424 F.2d at 571.

4.   <u>Whether Petitioner's Method of Accounting Clearly Reflects Income</u>

As discussed next, we conclude that the <u>Cincinnati</u> and <u>Union Pacific</u> cases do not establish that petitioner's expensing of capital items costing less than $500 results in a clear reflection of its income.  See, e.g., <u>Knight-Ridder Newspapers, Inc. v. United States</u>, 743 F.2d 781, 791-793 (11th Cir. 1984) (Court used mathematical analysis to decide that the taxpayer's accounting method did not clearly reflect income).

First, the above chart shows that the ratios of disputed items to various measures of petitioner's size are substantially larger than in <u>Cincinnati</u> and <u>Union Pacific</u>.  For example, in <u>Cincinnati</u>, the taxpayer's disputed items were less than one percent of the taxpayer's net income in the 3 years at issue, see <u>Cincinnati, New Orleans & Tex. Pac. Ry. Co. v. United States</u>, 424 F.2d at 571; in the instant case, the disputed items were 165 percent of petitioner's 1995 taxable income and 83.5 percent of its 1996 taxable income.  In <u>Cincinnati</u>, the taxpayer's disputed

items were less than 2 percent of its total deduction for depreciation for the years in issue; in contrast, petitioner's disputed items were 288 percent and 189 percent of its total depreciation deduction for 1995 and 1996.

Petitioner contends that comparing the disputed items to its gross receipts shows that its accounting method did not materially distort its income. We disagree. First, the disputed items of the taxpayer in Cincinnati were .04 percent, .03 percent, and .07 percent of its gross receipts in the years at issue, whereas petitioner's disputed items were .85 percent and .71 percent of its gross receipts in 1995 and 1996. Thus, petitioner's ratios were 10 to 28 times larger than those in Cincinnati. Petitioner points out that the court in Cincinnati compared the taxpayer's disputed items to its total operating expenses, and contends that we should compare petitioner's disputed items to its total expenses. We disagree that this helps petitioner. In Cincinnati, the taxpayer's disputed items were .06 percent, .04 percent, and .01 percent of its total operating expenses for the years in issue; petitioner's disputed items were .84 percent and 1.12 percent of its total expenses. Petitioner's ratios are 14 to 112 times larger than those in Cincinnati.

Second, additional factors were present in Cincinnati that have not been shown to be present here. The court in Cincinnati

considered 17 years of data such as the taxpayer's gross receipts, capital expenses, total investment, net taxable income, total operating expenses, total depreciation, and the disputed minimum items, in deciding that the taxpayer's method of accounting clearly reflected income. See id. at 569, 571. Petitioner did not offer evidence from its years other than the years at issue.

The court in Cincinnati noted that the record there contained evidence that the ICC had adopted the minimum rule after concluding that imposition of the minimum rule would not distort income or cause the railroads' financial statements not to clearly reflect income. See id. at 570. In contrast, here petitioner offered no evidence that HCFA considered whether a minimum expensing policy would cause financial statements of home health care agencies not to clearly reflect income.

The taxpayer's expensing method in Cincinnati was in accordance with generally accepted accounting principles (GAAP). See id. at 569-570. Petitioner contends that its minimum expensing rule also complies with GAAP but offered no evidence to support that contention.

The ICC required the taxpayers in Cincinnati and Union Pacific to expense the items that were the subject of the disallowed deductions. In contrast, Medicare guidelines permit, but do not require, petitioner to expense the disputed assets.

Cf. <u>Commissioner v. Idaho Power Co.</u>, 418 U.S. 1, 14-15 (1974) (where a taxpayer's generally accepted method of accounting is made compulsory by a regulatory agency and that method clearly reflects income, it is almost presumptively controlling for Federal tax purposes); <u>Sprint Corp. v. Commissioner</u>, 108 T.C. 384, 403-404 (1997).

Petitioner contends that we have sanctioned the use of a minimum expensing rule, citing <u>Galazin v. Commissioner</u>, T.C. Memo. 1979-206, in which we allowed the taxpayer to deduct the cost of a calculator due to the small amount of the expenditure ($52.45) and the relatively short (2-year) useful life of the asset. Here, respondent disallowed deductions of $467,944 and $351,543 for the disputed items. These amounts are not comparable to the amount at issue in <u>Galazin</u>. Cf. <u>Sharon v. Commissioner</u>, 66 T.C. 515, 527 (1976) (taxpayer must capitalize $801 bar examination fees and expenses to practice law in California because amount was too large to disregard its capital nature), affd. 591 F.2d 1273 (9th Cir. 1978).

We conclude that petitioner has not shown that its accounting method clearly reflected income nor that it was an abuse of discretion for respondent to require petitioner to change that method of accounting. Thus, we hold that petitioner may not expense the cost of its assets that cost less than $500 and that have a useful life greater than 1 year.

B.    Whether Petitioner Is Liable for the Penalty Under Section 6662 for Substantial Understatement

Respondent determined that petitioner is liable for the accuracy-related penalty for substantial understatement for 1995 and 1996 under section 6662.

The accuracy-related penalty may not apply if the taxpayer reasonably relied on the advice of a professional, such as an accountant, and acted in good faith.  See sec. 6664(c)(1); sec. 1.6664-4(c), Income Tax Regs.  The understatement is reduced to the extent that it (1) is based on substantial authority, or (2) is attributable to an item that was adequately disclosed and that has a reasonable basis.  See sec. 6662(d)(2)(B).

Respondent contends that petitioner offered no evidence that it gave its tax preparer all of the information needed to correctly prepare its 1995 and 1996 tax returns or that its preparer and petitioner thoroughly reviewed petitioner's return information.  We disagree.  Petitioner relied on Pearlman, Nebben, a C.P.A. firm with experience in the health care industry, to prepare petitioner's tax returns for the years in issue. Petitioner has consistently followed a minimum expensing policy since it was incorporated.  Pearlman, Nebben prepared petitioner's tax returns for those years, which reasonably led petitioners to believe that it agreed with petitioner's minimum expensing policy.  Cf. Bokum v. Commissioner, 94 T.C. 126, 147-148 (1990) (accountant's failure to sign the tax return should

have put the taxpayer on notice that he was not backing the advice embodied in the return), affd. 992 F.2d 1132 (11th Cir. 1993). Respondent contends that petitioner did not have substantial authority or reasonable cause for its minimum expensing position because petitioner's chief financial officer, Pamela Rau (Rau), did not discuss the deductibility of the disputed assets with petitioner's tax return preparer for 1995 and 1996. We disagree. Rau reasonably explained that she did not discuss petitioner's expensing policy with the preparer because petitioner's expensing policy in 1995 and 1996 was the same as it had been in previous years. Petitioner's reliance on its preparer was reasonable cause for expensing the disputed assets in 1995 and 1996.

We hold that petitioner is not liable for the accuracy-related penalty under section 6662 for 1995 and 1996.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.